Craig H. Mar, Attorney (SBN 176939)
1073 Walker Ave.
Oakland, CA 94610
craigsmartncute@aol.com,
510-451-9457

Attorney for Plaintiff Harvey Ottovich

Mark Ottovich
37231 Mission Blvd.
Fremont, CA 94536
Telephone: 510-894-1976

Plaintiff in Pro per

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND BRANCH**

| | |
|---|---|
| **HARVEY G. OTTOVICH REVOCABLE LIVING TRUST DATED MAY 12, 2006, HARVEY OTTOVICH AS TRUSTEE FOR THE HARVEY G. OTTOVICH REVOCABLE LIVING TRUST DATED MAY 12, 2006, MARK OTTOVICH AS SUCCESSOR TRUSTEE FOR AND BENEFICIARY OF HARVEY G. OTTOVICH REVOCABLE LIVING TRUST DATED MAY 12, 2006,**<br><br>Plaintiffs,<br><br>v.<br><br>**WASHINGTON MUTUAL INC. CHASE HOME FINANCE, LLC, JP MORGAN CHASE BANK NA, AN ACQUIRER OF CERTAIN ASSETS AND LIABILITIES OF WASHINGTON MUTUAL BANK FROM FEDERAL DEPOSIT INSURANCE CORPORATION ACTING AS RECEIVER, DOES ONE THROUGH 50, INCLUSIVE,**<br><br>**Defendants.** | Case No.: 3: 10-cv-02842-JCS<br><br>**AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, VIOLATION OF 12 USC 2605, UNFAIR DEBT COLLECTION, INJUNCTION, DECLARATORY RELIEF, ACCOUNTING, UNFAIR COMPETITION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**<br><br>DEMAND FOR JURY TRIAL |

COMES NOW, Plaintiffs Harvey G. Ottovich Revocable Living Trust dated May 12, 2006, Harvey Ottovich as trustee of the Harvey G. Ottovich Revocable Living Trust dated May 12, 2006, and Mark Ottovich as successor trustee to the Harvey G. Ottovich revocable living trust dated May 12, 2006 and has trust beneficiary who allege as follows:

1. Plaintiff Harvey Ottovich resides, and at all times mentioned in this complaint was residing in the City of Fremont, Alameda County, California.

2. Plaintiff Mark Ottovich resides, and at all times mentioned in this complaint was residing in the City of Fremont, Alameda County, California.

3. Plaintiff Mark Ottovich is Plaintiff Harvey Ottovich's brother, and a silent partner in the subject property.

4. Defendants Washington Mutual Inc., Chase Home Finance, LLC And JP Morgan Chase Bank NA, an acquirer of certain assets and liabilities of Washington Mutual Bank From Federal Deposit Insurance Corporation Acting As Receiver, (J.P. Morgan Chase Bank) at all times alleged in this complaint, were and are corporations doing business in California. Washington Mutual Inc.'s principal place of business is in California.

5. All incidents and injuries alleges in this complaint occurred in Alameda County, California.

6. Defendants, at all times mentioned herein were the agents, employees and co-conspirators of their Co-Defendants and in doing the things alleged were acting within the course and scope of the agency, employment and/or conspiracy and with the prior knowledge of, permission, consent, and/or ratification of their Co-Defendants.

7. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants, Does 1 to 50 are currently unknown to Plaintiffs who therefore sue those Defendants by fictitious names. Plaintiffs will amend their Complaint to show the true names and capacities of Does 1 to 50 when ascertained. Plaintiffs are informed and believe, and on that basis allege, that each of the Does 1 to 50 was legally responsible to Plaintiffs in some way for the events, omissions, happenings and allegations herein.

8. At all times alleged in this complaint Plaintiff Harvey Ottovich trustee of the

Harvey G. Ottovich Revocable Living Trust dated May 12, 2006 which trust was, and is, the owner of the real property commonly described as 303 Laurel Ave., Hayward, County of Alameda, California (hereinafter, the "Subject Property").

9. At all times alleged in this complaint Defendants Washington Mutual Inc., J.P. Morgan Chase Bank and Does 1 through 10 were the lenders to Plaintiff Harvey Ottovich of a purchase money loan secured by the Subject Property (the loan on the Subject Property). The loan number of the loan is 0843966896.

10. At all times alleged in this complaint Plaintiff Harvey Ottovich's brother Mark Ottovich was the successor trustee to the Harvey G. Ottovich Revocable Living Trust Executed on May 12, 2006 and the attorney-in-fact for his brother Harvey Ottovich and in possession of a valid power of attorney executed by Harvey Ottovich.

## FACTUAL ALLEGATIONS

11. Plaintiffs hereby reallege and incorporate by reference, as though fully set forth here, paragraphs 1 through 10 of this complaint.

12. In about March of 2010, Harvey Ottovich was incapacitated and unable to attend to his normal day-to-day duties in connection with managing the Subject Property, including making payments on the above described loan.

13. Commencing on or about March 9, 2009, Mark Ottovich repeatedly contacted Defendant JP Morgan Chase Bank by telephone, informed J.P. Morgan Chase Bank of his brother Harvey Ottovich's incapacity, and that he, Mark Ottovich, was Harvey Ottovich's attorney-in-fact with power of attorney to intercede and handle his financial affairs.

14. Because Harvey Ottovich, due to his incapacity, was not in possession of adequate documentation of how much was owed to bring the loan on the Subject Property current, Mark Ottovich sought to ascertain from J.P. Morgan Chase Bank employees the amount due.

15. J.P. Morgan Chase Bank personnel were unable to, or refused to, provide Mark Ottovich with adequate information about the amount to bring the loan current. Plaintiffs are informed and believes and therefore allege that J.P. Morgan Chase Bank personnel negligently,

recklessly or intentionally provided incomplete, misleading or wrong information which caused the loan on Subject Property to be subject to penalties and fees for late or incomplete payments, whether or not the correct amount had been paid.

16.  A partial chronology of attempts made by Mark Ottovich to confirm the amounts due to bring and keep the loan on the Subject Property current includes, but is not limited to, the following:

- On or about March 13, 2009, Mark Ottovich spoke with J.P. Morgan Chase Bank representative Warren (whose last name Mark Ottovich requested but Warren refused to provide) who would not provide Mark Ottovich with loan payment information and, instead, instructed Mark Ottovich to call back with Harvey Ottovich, for a three-way telephone conversation. Warren would not accept Mark Ottovich's offer to fax the executed power of attorney making him attorney-in-fact for Harvey Ottovich. Warren further refused to accept Mark Ottovich's explanation that Harvey Ottovich was incapacitated and incapable of participating in a three-way telephone conversation, or any telephone conversation whatsoever.
- On or about July 24, 2009, Mark Ottovich paid J.P. Morgan Chase Bank a total of $4,122.02, in an attempt to bring the loan current. A J.P. Morgan Chase Bank representative whose name Mark Ottovich cannot recall had represented to him that the $4,122.02 amount would bring the loan current.
- On or about July 28 2010, Mark Ottovich spoke with Dee (whose last name Mark Ottovich requested but Dee refused to provide) who informed him of some type of "new program" but did not provide information sufficient for Mark Ottovich to make payments to bring the loan current. Dee, instead, told Mark Ottovich to call back "next month" about the "new program."
- On or about August 10, 2009, Mark Ottovich spoke to Christy (who declined to provide her last name) regarding a loan modification and was referred to "Pepper" who informed Mark Ottovich to call another J.P. Morgan Chase Bank telephone number. During these conversations Mark Ottovich provided to either Christie or Pepper the information that

Harvey Ottovich did not live in the house on the Subject Property and was falsely told that J.P. Morgan Chase Bank would still work with Harvey Ottovich on a loan modification.

- On or about September 11, 2009, Mark Ottovich spoke with Thomas (who declined to provide his last name) who informed him that the amount of $1,742.75, paid by no later than September 30, 2009, would bring the loan current. Thomas further stated that if Harvey Ottovich could not bring the loan current by September 30, 2009, J.P. Morgan Chase Bank would be able to "work with him." This statement was false. J.P. Morgan Chase Bank refused at that time and continues to refuse to take any steps whatsoever to address a loan modification for the loan on the Subject Property.

- On or about September 28, 2009, Mark Ottovich spoke with a J.P. Morgan Chase Bank representative named Mister Mayor who informed him that an amount of $6,793, to be paid by 4:30 p.m., on the date of the conversation would bring the loan on the Subject Property current. Mark Ottovich immediately paid the amount Mister Mayor told him was due.

- On or about October 8, 2009, Mark Ottovich spoke with Cheryl (whose last name he requested that she refused to provide) who told him to call her at the end of the month at 866-371-3754, extension 19881, to make the payment on the loan on the Subject Property on behalf of Harvey Ottovich.

- On or about October 29, 2009, Mark Ottovich called the telephone number and extension Cheryl had provided to make a scheduled payment. Cheryl was not available. Mark spoke to persons named Joe and Tim (who refused to provide their last names) about making the payment. Both Joe and Tim hung up on Mark Ottovich instead of processing the payment, as Cheryl had said she would.

- On or about January 8, 2010, Mark Ottovich spoke to Gail (who refused to provide her last name) who told him to send a letter to J.P. Morgan Chase Bank regarding a "spread shortage," which Mark Ottovich understood to be a shortage in an escrow account for property taxes, and, in the letter, to request to be allowed to pay the shortage over a

longer period of time due to Harvey Ottovich's incapacity and resulting hardship.

- On or about January 13, 2010, Mark Ottovich spoke with Julie (who refused to provide her last name) about the escrow shortage. On the same day Mark Ottovich spoke with another representative (who also refused to provide her name) and explained that previous conversation with Julie regarding the "spread shortage" or escrow shortage. The representative was uncooperative and rude.  Therefore Mark Ottovich hung up on the representative.

- On or about January 28, 2010, Mark Ottovich received a letter from J.P. Morgan Chase Bank informing him that J.P. Morgan Chase Bank had placed a hazard policy of insurance on the Subject Property. Plaintiffs are informed and believe that neither he nor Mark Ottovich were previously notified of this action by J.P. Morgan Chase Bank.

- The hazard insurance policy J.P. Morgan Chase Bank placed on the Subject Property was duplicative and unnecessary because there was in existence at the time a Farmers Insurance policy in place. Mark Ottovich requested a credit for the duplicative and unnecessary hazard insurance policy J.P. Morgan Chase Bank had placed on the Subject Property and billed to Harvey Ottovich. The cost of the duplicative and unnecessary policy has never been credited back to Harvey Ottovich on any subsequent loan statement he received from J.P. Morgan Chase Bank.

- On or about February 12, 2010, Mark Ottovich spoke with J.P. Morgan Chase Bank representative Andrew (who refused to provide his last name) who told him to talk to the generic "Customer Service" about being allowed to extend payments into the tax escrow account to spread the shortages for payment of taxes on the Subject Property over a longer period of time. Andrew provided no assistance.

- On or about February 17, 2010, Mark Ottovich was able to again speak with Julie regarding the property taxes due on the Subject Property, and, when informed by Julie that the amount of $6,024.00 would bring the loan on the Subject Property current, immediately went to a J.P. Morgan Chase Bank branch and paid that amount to J.P. Morgan Chase Bank. Mark Ottovich then, on February 17, 2010, faxed a letter to Julie

AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIEDCOVENANT OF GOOD FAITHAND FAIR DEALING, VIOLATIONOF 12 USC 2605, FRAUD, UNFAIR DEBT COLLECTION, INJUNCTION DECLARATORY RELIEF, ACCOUNTING

Page **6** of **20**

along with the receipt for payment of the $6,024.00 confirming that it had been paid.

- The February 17, 2010 letter Mark Ottovich faxed to Julie on that date also confirmed that J.P. Morgan Chase Bank would accept the sum of $2,008 (increased from $1,742.75) per month over a 60 month period to pay back taxes on the Subject Property in the amount of $8,544.60, which had been paid by J.P. Morgan Chase Bank.

- The February 17, 2010 letter further confirmed that Julie told Mark Ottovich "[J.P. Morgan Chase Bank had] to pay $9,093.39 on the back taxes and that there was still $500 in the escrow account." Mark Ottovich requested, but was never provided with, any documentation attesting to the above-stated facts.

- On or about February 18, 2010, Mark Ottovich spoke with J.P. Morgan Chase Bank representative Doris (who refused to provide her last name) and she informed him that Harvey Ottovich still owed late charges on an account Doris identified as "Case Number 124139715." Doris told Mark Ottovich that she did not have all the information about the amount of the charges, but that she would call him back in about five days with complete information. Doris never did contact Mark Ottovich again.

- On or about March 16, 2010, Mark Ottovich spoke with Liz (who refused to provide her last name) who informed him that Harvey Ottovich's account showed $1,957.07 needed to bring the loan current on the Subject Property. Mark Ottovich immediately paid $2,000 to cover the $1,957.07 amount Liz said was owed.

- On or about March 25, 2010, Mark Ottovich received a letter from J.P. Morgan Chase Bank stating that Harvey Ottovich owed $1,884.95 to bring the loan on the Subject Property current, which was required to be paid within 10 days of the letter's date. Plaintiffs are informed and believe that the $1,884.95 amount is some permutation of the $1,957.07 amount concerning which Mark Ottovich paid $2000.00, on or about March 16 to ostensibly bring the loan current.

- On or about April 3, 2010, Harvey Ottovich received a statement from J.P. Morgan Chase Bank Bank stating that he owed an additional $3,842.02 to bring the loan current.

- On or about April 5, 2010, Harvey Ottovich received a letter from J.P. Morgan Chase

AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIEDCOVENANT OF GOOD FAITHAND FAIR DEALING, VIOLATIONOF 12 USC 2605, FRAUD, UNFAIR DEBT COLLECTION, INJUNCTION DECLARATORY RELIEF, ACCOUNTING

Page **7** of **20**

- Bank dated April 3, 2010, stating that $2,621.01 remained unpaid on the loan on the Subject Property. This April 3, 2010 letter is in apparent contradiction with the April 3, 2010 statement referenced in the above paragraph.
- On or about April 5, 2010, Mark Ottovich spoke with J.P. Morgan Chase Bank Representative Ashley (who refused to provide her last name) who informed him that Harvey Ottovich was two months behind in his loan payments. Mark Ottovich explained that he had just paid over $6,000 to bring the loan on the Subject Property current. Ashley told Mark Ottovich to call Customer Service at 800-548-7912. When Mark called 800-548-7912 number, he was twice disconnected before being able to speak to anyone and then was transferred back to collections. Collections told Mark Ottovich to call a different number-877-314-6359. When Ottovich called that number he was again disconnected without being able to speak to anyone.
- On or about April 17, 2010, Mark Ottovich received a letter from J.P. Morgan Chase Bank dated April 15, 2010, stating that Harvey Ottovich had not made any payments since March 1, 2010 and that as of April 14, 2010, $5,856.02 was required to bring the loan on the Subject Property current.
- Defendants' April 15, 2010 letter states that money Mark Ottovich had presented to J.P. Morgan Chase Bank as payments on the loan on the Subject Property had not been credited to the loan on the Subject Property and was being held in "suspense." Defendant's April 15, 2010 letter does not state how much money J.P. Morgan Chase Bank was holding in "suspense."
- Defendants' April 15, 2010 letter further places Harvey Ottovich on notice of J.P. Morgan Chase Bank's intent to foreclose on the Subject Property.

17.     Plaintiffs are informed and believe, and thereon allege, that J.P. Morgan Chase Bank has taken money from them but has failed to apply the money toward payment on the loan on the Subject Property and is instead holding the money in another account which is not for the benefit of Harvey Ottovich.

18.     Plaintiffs are informed and believe, and thereon allege, that the amount held by

J.P. Morgan Chase Bank in another account instead of being posted to the account for the loan on the Subject Property would bring the loan current.

19.  Plaintiffs are further informed and believe, and thereon allege, that J.P. Morgan Chase Bank, instead of informing Harvey Ottovich and Mark Ottovich of the amount in the other account, and the true amount required to bring the loan on the Subject Property current, is holding the money for its own purposes in breach of its contract with Harvey Ottovich, and in breach of that contract's implied covenant of good faith and fair dealing.

**FIRST CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS FOR BREACH OF CONTRACT**

20.  Plaintiffs hereby reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 19 of this complaint.

21.  Plaintiff Harvey Ottovich entered into a contract with Defendant Washington Mutual Inc. by which Washington Mutual Inc. agreed make a purchase money loan to Harvey Ottovich for purchase of the Subject Property.

22.  At some time thereafter Defendant J.P. Morgan Chase Bank Home Finance LLC acquired certain assets and liabilities of Washington Mutual Bank from Federal Deposit Insurance Corporation, assumed the obligations of Washington Mutual, and became the loan servicer of the purchase money loan Washington Mutual made to Harvey Ottovich.

23.  By the terms of the contract Harvey Ottovich became obligated to pay money to Washington Mutual and/or J.P. Morgan Chase Bank Home Finance LLC.  At the same time Washington Mutual and/or J.P. Morgan Chase Bank became obligated to accept from Harvey Ottovich payments of principal and interest and to apply said payments to pay accrued interest and to reduce the loan amount with any remainder.

24.  Harvey Ottovich has performed all, or substantially all, of the significant things the contract required him to do. Harvey Ottovich has, further, made good faith efforts to comply with the contract , or has been excused from performance by J.P. Morgan Chase Bank's failure to perform.

25.  J.P. Morgan Chase Bank has received essentially what the contract called for

because Harvey Ottovich's failures, if any, were so trivial that they could have been easily fixed.

26. J.P. Morgan Chase Bank Home Finance LLC has breached the contract with Harvey Ottovich by failing and refusing to credit payments made by or on behalf of Harvey Ottovich to the loan on the Subject property, as required under the terms of the contract.

27. Defendant J.P. Morgan Chase Bank Home Finance LLC has further breached the contract by failing to communicate to Plaintiff Harvey Ottovich that it was holding money in a separate account that was not for the benefit of Harvey Ottovich which has been paid by or on behalf of Harvey Ottovich pursuant to his performance of the contract.

28. Harvey Ottovich and Mark Ottovich have been damaged in that the money held by J.P. Morgan Chase Bank Home Finance LLC in a separate account has caused Harvey Ottovich to be required to pay additional loan payment amounts, late fees and penalties on the loan on the subject property when the money in the separate account was adequate to make payments thereby relieving Harvey Ottovich of liability to J.P. Morgan Chase Bank Home Finance LLC for the above-referenced payments, late fees and penalties.

29. Harvey Ottovich and Mark Ottovich have been further damaged in that J.P. Morgan Chase Bank Home Finance LLC did not timely inform them that it was holding money belonging to them in a separate account instead of crediting the money to pay the interest and reduce the principal on the loan on the Subject Property which is the subject of the contract.

30. Harvey Ottovich has been further damaged in that the above described breaches of the contract by J.P. Morgan Chase Bank Home Finance LLC have caused him emotional distress in the form of fear, anxiety, and other emotional and physical sequelae because J.P. Morgan Chase Bank has informed him that it intends to foreclose on the Subject Property.

**SECOND CAUSE OF ACTION
AGAINST ALL DEFENDANTS FOR BREACH OF THE
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

31. Plaintiffs hereby reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 29 of this complaint.

32. Plaintiff Harvey Ottovich entered into a contract with Defendant Washington Mutual Inc. by which Washington Mutual agreed make a purchase money loan to Harvey

Ottovich for purchase of the Subject Property.

33. At some time thereafter Defendant J.P. Morgan Chase Bank Home Finance LLC assumed the obligations of Washington Mutual, and became the loan servicer of the purchase money loan Washington Mutual made to Harvey Ottovich.

34. By the terms of the contract Harvey Ottovich became obligated to pay money to Washington Mutual and/or J.P. Morgan Chase Bank Home Finance LLC. At the same time, J.P. Morgan Chase Bank became obligated to accept from Harvey Ottovich payments of principal and interest and to apply said payments to pay accrued interest and reduce the loan amount with any remaining balance.

35. Harvey Ottovich has performed all, or substantially all, of the significant things the contract required him to do, or been excused from performance by Washington Mutual and/or J.P. Morgan Chase Bank Home Finance LLC. performance failures. Harvey Ottovich has, further, made good faith efforts to comply with the contract and J.P. Morgan Chase Bank has received essentially what the contract called for because Harvey Ottovich's failures, if any, were so trivial that they could have been easily fixed.

36. In every California contract or agreement there is implied a promise of good faith and fair dealing; meaning that each party will not do anything to unfairly interfere with the right of the other party to receive the benefits of the contract. Good faith is honesty in fact and in conduct or action. The essence of good faith is objectively reasonable conduct. Bad faith may be overt or may consist of inaction, and may exist, even if J.P. Morgan Chase Bank believes its conduct to be justified.

37. J.P. Morgan Chase Bank Home Finance LLC has breached the covenant of good faith and fair dealing implied in its contract with Harvey Ottovich by failing and refusing to credit payments made by or on behalf of Harvey Ottovich to the loan as required under the terms of the contract.

38. Defendant J.P. Morgan Chase Bank Home Finance LLC has further breached the covenant of good faith and fair dealing by failing to communicate to Plaintiff Harvey Ottovich that it was holding money in a separate account not for the benefit of Harvey Ottovich that had

been paid by or on behalf of Harvey Ottovich pursuant to his performance of the contract.

39. Defendant J.P. Morgan Chase Bank Home Finance LLC has further breached the covenant of good faith and fair dealing by, after offering to negotiate a loan modification with Harvey Ottovich, and then confirming its offer to negotiate a loan modification, failing and refusing to enter into any negotiations whatsoever for the purpose of modifying the loan on the Subject Property; and, while communicating to Harvey Ottovich its intent to negotiate a loan modification, instead secretly following a course of action intended to deprive Harvey Ottovich of the Subject Property by foreclosure.

40. Harvey Ottovich and Mark Ottovich have been damaged in that the money held by J.P. Morgan Chase Bank Home Finance LLC in a separate account has caused Harvey Ottovich to be required to pay additional payments, late fees and penalties on the loan on the Subject Property when the money in the separate account was adequate to make payments, thereby relieving Harvey Ottovich of liability to J.P. Morgan Chase Bank Home Finance LLC for the above mentioned payments, late fees and penalties.

41. Harvey Ottovich and Mark Ottovich been further damaged in that J.P. Morgan Chase Bank Home Finance LLC has not informed them that it was holding money belonging to them in a separate account instead of crediting the money to pay the interest and reduce the principal on the loan on the Subject Property which is the subject of the contract.

42. Harvey Ottovich has been further damaged in that the above described breaches of the covenant of good faith and fair dealing by J.P. Morgan Chase Bank Home Finance LLC has caused him emotional distress in the form of fear, anxiety, and other emotional and physical sequelae because J.P. Morgan Chase Bank has informed him that it intends to foreclose on the Subject Property.

**THIRD CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS FOR VIOLATION OF 12 U.S.C. 2605 UNDER RESPA**

43. Plaintiffs hereby reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 41 of this complaint.

44. J.P. Morgan Chase Bank Home Finance LLC is subject to the provisions of 12

**AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIEDCOVENANT OF GOOD FAITHAND FAIR DEALING, VIOLATIONOF 12 USC 2605, FRAUD, UNFAIR DEBT COLLECTION, INJUNCTION DECLARATORY RELIEF, ACCOUNTING**
Page **12** of **20**

USC 2605.

45. J.P. Morgan Chase Bank Home Finance LLC, received a qualified written request from Plaintiffs or Plaintiffs' agent for information relating to the servicing of the subject loan and failed in its duty, as is required under 12 USC 2605, to provide Plaintiffs or Plaintiffs' agent with a written response acknowledging receipt of the correspondence within 20 days.

46. J.P. Morgan Chase Bank Home Finance LLC received a qualified written request from Plaintiffs or Plaintiffs' agent for information relating to the service of such loan and failed, as is required under 12 USC 2605, not later than 60 days after receipt of Plaintiffs' qualified written request, to make appropriate corrections to Plaintiffs' account, including the crediting of any late charges or penalties, and transmit to the Plaintiffs a written notification of such correction; and then, after conducting an investigation, provide Plaintiffs with a written explanation or clarification including a statement of the reasons for which J.P. Morgan Chase Bank believed Plaintiffs' account was correct, and the name and telephone number of an individual employed by J.P. Morgan Chase Bank who could provide assistance to Plaintiffs.

47. Harvey Ottovich and Mark Ottovich have been damaged in that the money held by J.P. Morgan Chase Bank Home Finance LLC in a separate account has caused them to be required to pay late fees and penalties on the loan that is the subject of the contract when the money in the separate account was adequate to make payments, thereby relieving them of liability to J.P. Morgan Chase Bank Home Finance LLC for the above mentioned late fees and penalties.

48. Harvey Ottovich and Mark Ottovich have been further damaged in that J.P. Morgan Chase Bank Home Finance LLC has not informed them that it was holding money belonging to them in a separate account instead of crediting the money to pay the interest and reduce the principal on the loan on the Subject Property which is the subject of the contract.

49. Harvey Ottovich has been further damaged in that the above described breaches of the contract by J.P. Morgan Chase Bank Home Finance LLC has caused him emotional distress in the form of fear, anxiety, and other emotional physical sequelae because J.P. Morgan Chase Bank has informed him that it intends to foreclose on the Subject Property.

50. Harvey Ottovich and Mark Ottovich have been further damaged in that they have been required to expend costs and attorney's fees in connection with this action and Plaintiffs hereby request an award of costs and attorneys fees as the court may determine reasonable.

### FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS FOR VIOLATION OF FEDERAL AND STATE FAIR DEBT COLLECTION PRACTICES STATUTES

51. Plaintiffs reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 49 of this complaint.

52. Plaintiffs are debtors as defined under both the California and Federal Fair Debt Collection Practices statutes.

53. Defendants are debt collectors as defined under both the California and Federal Fair Debt Collection Practices Statutes.

54. Venue for this cause of action is appropriate under both California and federal statutes.

55. The loan on the subject property is a debt consumer debt under both California and federal statutes.

56. Defendants' representatives, prior to foreclosure proceedings, have engaged in, but not limited to, the following unlawful debt collection practices.

- Failure to disclose the names of persons calling Plaintiffs in initial and all subsequent contacts in the form of communications, including letters and telephone calls.
- Engaging in the use of language the natural effect of which is to abuse the debtor.

### FIFTH CAUSE OF ACTION DEMANDING AN ACCOUNTING

57. Plaintiffs allege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 55 of this complaint.

58. Plaintiffs and J.P. Morgan Chase Bank, at all times here alleged, were in a fiduciary relationship and said relationship demanded a higher than ordinary degree of care and responsibility from J.P. Morgan Chase Bank has the dominant party in the fiduciary relationship.

59. The accounts between plaintiffs and J.P. Morgan Chase Bank were and are so

complicated that ordinary legal action demanding a fixed sum is impracticable.

60.     The balance due from J.P. Morgan Chase Bank to plaintiffs can only be ascertained by an accounting

61.     Plaintiffs demand that J.P. Morgan Chase Bank provide an accounting stating all information concerning all money held in "suspense" instead of credited to the loan on the Subject Property. Said accounting shall provide the dates and amounts of all money placed in suspense, the dates and amounts of all subsequent removal of any money from suspense, and the dates and amounts and allocation of all money removed from suspense.

62.     Plaintiffs demand that J.P. Morgan Chase Bank provide an accounting stating all information concerning all money credited to the loan on the Subject Property. Said accounting shall provide dates and amounts of all money credited to the loan and the Subject Property, and the source of all money credited to the loan on the Subject Property, whether from suspense or elsewhere.

63.     Plaintiffs demand that J.P. Morgan Chase Bank provide an accounting stating all penalties and other fees assessed against the loan on the Subject Property.

**SIXTH CAUSE OF ACTION**
**FOR MANDATORY AND PROHIBITIVE INJUNCTIONS**

64.     Plaintiffs allege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 59 of this complaint.

65.     Plaintiffs have demanded that the Defendants, and each of them, stop their wrongful conduct and threatened wrongful conduct, as described above and further herein, and comply with state and federal law and with Defendants' representations and promises to negotiate with Plaintiffs to modify Plaintiff Harvey Ottovich's loan, and to cease and desist from refusing to provide information to Plaintiffs about funds held in other accounts which were paid by Plaintiffs for payment on principal and interest on the loan on the subject property.

66.     Defendants have threatened wrongful conduct, and unless and until enjoined by Order of this Court such potential wrongful conduct will cause great and irreparable injury to Plaintiffs in that it precludes Plaintiffs from the quiet enjoyment of the property, and places a

cloud on the subject property's title, which unnecessarily restricts and diminishes Plaintiffs' ability to sell or otherwise convey their property and reduces the value of Plaintiffs' property.

67. Plaintiffs have no adequate remedy at law for the injuries currently being suffered, as well as those which are threatened, and are unable to determine the precise amount of damages Plaintiffs will suffer if Defendants' conduct is not enjoined. Further, Plaintiffs will be forced to institute a multiplicity of suits to obtain adequate compensation for their injuries herein.

68. Plaintiffs allege that as a result of Defendants' conduct, Plaintiffs have incurred special damages in excess of $50,000.00 in attorney's fees and costs to date and diminished property values in excess of $300,000.00 to date. Plaintiffs will be further damaged in like manner as long as Defendants' conduct continues.

**SEVENTH CAUSE OF ACTION**
**FOR DECLARATORY RELIEF**

69. Plaintiffs reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 64 of this complaint.

70. Plaintiffs seek declaratory relief pursuant to section 1060 of the California Code of Civil Procedure for a judicial determination of the rights and duties of Plaintiffs and Defendants with respect to an actual controversy which presently exists.

71. An actual controversy exists between and among Plaintiffs and Defendants concerning their respective rights and obligations as to Plaintiffs' rights and Defendants' duties regarding a loan modification and Plaintiffs' entitlement to be informed of money paid in interest and to reduce principal of the loan on the subject property. Plaintiffs desire a judicial determination and declaration regarding these rights and duties.

72. Plaintiffs are informed and believe, and on that basis allege, that the contentions of Defendants concerning the parties' respective rights and obligations are in conflict with Plaintiffs' contentions. Plaintiffs desire a judicial determination of the respective rights and duties and the court's declaration that the Plaintiffs' contentions, as set forth above, are correct.

73. Such a declaration is necessary and proper at this time in order that the parties

will be bound by the same interpretation of applicable law and facts, and so that they may determine their rights and obligations among themselves in order to avoid the multiplicity of legal actions that may otherwise be necessary.

74. By forcing Plaintiffs to pursue their legal rights through this litigation, Defendants have obligated themselves as a matter of law to pay attorneys fees and other expenses incurred by Plaintiffs in this action. Plaintiffs will continue to incur fees and expenses in this action, and such fees and expenses are expected to increase substantially by the time of trial.

**EIGHTH CAUSE OF ACTION**
**FOR UNFAIR BUSINESS PRACTICES AGAINST ALL DEFENDANTS**

75. Plaintiffs reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 70 of this complaint.

76. Defendants have engaged in unfair, unlawful, and fraudulent business practices or acts as defined by the Business and Professions Code section 17200. Plaintiffs have been monetarily injured in this action because of the late fees, unnecessary and duplicative Insurance coverage, failure to credit payments, and thus have standing to pursue this claim.

77. Defendants' business practices have been unfair to the public in that the majority of the people charged with unlawful such as unnecessary expensive Insurance Coverage added to an Escrow shortage fund do not know what to do, will not protest it, or are afraid to ruin their good credit by missing a payment. With their thousands of customers the profit to defendants are enormous.

78. The utility of such conduct is marginal but the harm to the average working taxpayer is great.

79. Defendants' business practices unlawfully violate violating the Federal Real Estate Settlement Procedures Act (RESPA) 12 U.S.C. section 2605 by their poor customer service in the numerous wasted phone calls to the defendants, and, after a qualified written notice, failing to make corrections to their bogus late fees, their bogus duplicative Insurance fees, and their non credit of mortgage payments within 60 days of the qualified written notice.

80. Defendants' business practices have been fraudulent. Defendants have made false promises of a modification of the loan without an intent to ever follow through and committed

the acts noted above. Plaintiffs and other members of the public are likely to be deceived by the false promises of a modification, misappropriation of mortgage payments/failure to credit payments, extra duplicative Insurance coverage charges, and extra late fees.

81.   Damages proximately resulting from said acts of unfair competition are difficult to calculate. Plaintiffs and other members of the public have no other adequate remedy at law, except as stated herein. Plaintiffs allege that as a direct and proximate result of the said acts of unfair competition, defendants received and continue to hold funds belonging to members of the general public who were also harmed by defendants' wrongful conduct. Said acts by defendants present a continuing threat to members of the public and said acts are likely to continue unless enjoined by the court.

**NINTH CAUSE OF ACTION: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS**

82.   Plaintiffs reallege and incorporate by reference, as though fully set forth herein, paragraphs 1 through 77 of this complaint.

83.   Defendants' act of not checking to see if plaintiff had home insurance (he did) and charging expensive extra insurance to the plaintiff was an intentional act in conscious disregard of the rights of the plaintiff. It was extreme, outrageous, malicious, and oppressive conduct justifying an award of punitive damages.

84.   Defendants' act of suspending plaintiffs' mortgage payments and refusing to credit those payments and charging a late fee was an intentional act in conscious disregard of the rights of the plaintiff. It was extreme, outrageous, malicious, and oppressive conduct justifying an award of punitive damages.

85.   Defendants' act of occasionally threatening to foreclose on the family home or to accelerate the loan if a certain amount was not paid was an intentional act in conscious disregard of the rights of the plaintiff. It was extreme, outrageous, malicious, and oppressive conduct justifying an award of punitive damages.

86.   As a result of the above acts of the defendants, the plaintiff has suffered severe emotional distress.

**PRAYER FOR RELIEF**

Plaintiffs, therefore, pray for judgment against Defendants, and each of them, as follows:

FOR THE FIRST, SECOND, THIRD, FOURTH, EIGHTH, and NINTH CAUSES OF ACTION:

1. For compensatory damages in an amount exceeding $25,000.
2. For interest on said sum.
3. For punitive damages.
4. For special damages.

FOR THE FIFTH, SIXTH, SEVENTH, AND EIGHTH CAUSES OF ACTION:

5. That defendants be preliminarily and permanently enjoined from further prohibited acts.
6. That a full accounting be made of all moneys paid and owed.
7. That each parties respective rights and duties under the law and the contract be declared
8. That defendants, jointly and severally, be ordered to restore to the general pubic all funds acquired by the means of unfair competition.

ON ALL CAUSES OF ACTION:

9. For Attorney's fees.
10. For costs of suit incurred herein.
11. For such and further relief as the court may deem proper.

Date: _____

_____
Craig H. Mar, attorney for the plaintiff

Date: _____

_____
Mark Ottovich, Plaintiff in Pro per

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**AMENDED COMPLAINT FOR BREACH OF CONTRACT, BREACH OF THE IMPLIEDCOVENANT OF GOOD FAITHAND FAIR DEALING, VIOLATIONOF 12 USC 2605, FRAUD, UNFAIR DEBT COLLECTION, INJUNCTION DECLARATORY RELIEF, ACCOUNTING**
Page **20** of **20**