IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARVEY G. OTTOVICH REVOCABLE LIVING TRUST DATED MAY 12, 2006, HARVEY OTTOVICH AS TRUSTEE FOR THE HARVEY G. OTTOVICH REVOCABLE LIVING TRUST DATED MAY 12, 2006, MARK OTTOVICH AS SUCCESSOR TRUSTEE FOR AND BENEFICIARY OF HARVEY G OTTOVICH REVOCABLE LIVING TRUST DATED MAY 12, 2006, <br><br> Plaintiffs, <br><br> v. <br><br> WASHINGTON MUTUAL, INC., CHASE HOME FINANCE, LLC, AND JP MORGAN CHASE BANK, N.A., AN ACQUIRER OF CERTAIN ASSETS AND LIABILITIES OF WASHINGTON MUTUAL BANK FROM FEDERAL DEPOSIT INSURANCE CORPORATION ACTING AS RECEIVER, DOES ONE THROUGH 50, INCLUSIVE, <br><br> Defendants. <br> _____/ | No. C 10-02842 WHA <br><br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND VACATING HEARING** |

**INTRODUCTION**

This is a motion to dismiss in a foreclosure dispute. Defendants Chase Home Finance, LLC, and JP Morgan Chase Bank, N.A., move to dismiss all *nine* claims asserted against them in

plaintiffs' amended complaint.[*] For the reasons set forth below, defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. The hearing on this motion is hereby **VACATED**.

## STATEMENT

This civil action involves a mortgage loan secured by California real property located at 303 Laurel Avenue in Hayward (Compl. ¶ 8). Plaintiff Harvey Ottovich alleges defendants provided him a purchase money loan secured by the property (Compl. ¶ 9). In May 2006 Harvey Ottovich ceded title to the property to plaintiff Harvey G. Ottovich Living Trust Dated May 12, 2006, with plaintiff Mark Ottovich as the designated successor trustee and beneficiary. Mark Ottovich was also the attorney-in-fact for his brother Harvey and was in possession of a valid power of attorney executed by Harvey Ottovich (Compl. ¶ 10).

Soon after ceding title Harvey Ottovich became incapacitated and was unable to perform daily duties required to manage the property (Compl. ¶ 12). In March 2009 Mark Ottovich, on behalf of his brother and the Trust, began contacting defendants to seek information on how much money was owed on the loan for the property (Compl. ¶ 13–14). From March 2009 to April 2010 Mark Ottovich made over 25 attempts to contact defendants to clarify the amount owed on the loan and to make payments to defendants. During this one-year period, plaintiffs' complaint alleges, defendants refused to provide information to plaintiffs about the amount of money due to make loan payments current, misrepresented how much money plaintiffs owed defendants, and accepted payments from plaintiffs for the loan on the property but did not apply these payments to payment of that loan (Compl. ¶ 14–17). As a result of this behavior, plaintiffs alleged that they incurred damages in the form of late fees as well as emotional distress (Compl. ¶ 28–30).

In April 2010 defendants sent a letter to plaintiffs notifying them of foreclosure on the property (Compl. ¶ 16). Plaintiffs initiated the instant action in state court and defendants removed (Dkt. No. 1). Defendants initially brought a motion to dismiss on July 9, 2010 (Dkt. No. 5). Defendants initial motion to dismiss, however, was terminated when plaintiffs filed an

---

[*] During the case management conference on September 16, 2010, plaintiffs admitted that they had not yet served notice of this suit to Washington Mutual, Inc. Plaintiffs were instructed to serve Washington Mutual, or the FDIC on behalf of Washington Mutual, within thirty days. Washington Mutual did not join in this motion to dismiss, evidently not yet being in the case.

2

amended complaint with additional facts (Dkt. No. 11).  Defendants filed this motion to dismiss and plaintiffs filed a timely opposition (Dkt. No. 25).

**ANALYSIS**

The amended complaint sets forth nine federal and state law claims:  (1) breach of contract.; (2) breach of the implied covenant of good faith and fair dealing; (3) violations of the Real Estate Settlement Procedures Act ("RESPA") under 12 U.S.C. 2605; (4) unfair debt collection under California Civil Code Section 1788 and the Fair Debt Collections Act, 15 U.S.C. 1692 *et seq.*; (5) demand for accounting; (6) injunctive relief; (7) declaratory relief; (8) unfair business practices under Section 17200 of the California Business & Professions Code; and (9) intentional infliction of emotional distress.  As explained in the analysis below, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

**1.    STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim, a pleading must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face.  FRCP 12(b)(6); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged.  While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 1949-50.  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).  Dismissal without leave to amend is only appropriate when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citation omitted).  With these legal standards set forth, this order turns to the nine claims in the amended complaint.

**2.    STANDING**

The "irreducible constitutional minimum" of standing contains three elements:  (1) the plaintiff must have suffered an "injury in fact" — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;

3

1 (2) there must be a causal connection between the injury and the conduct complained of; and (3)
2 it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a
3 favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

4 Defendants contend that all plaintiffs lack standing, but defendants only make specific
5 arguments as to why plaintiff Mark Ottovich lacks standing. Defendants' argument fails.
6 Plaintiffs' amended complaint alleged that all plaintiffs, especially Harvey Ottovich, have a
7 concrete, redressable injury claim connected to the behavior of defendants. The Supreme Court
8 ruled in *Department of Commerce v. United States House of Representatives*, that if any plaintiff
9 has standing, it satisfies the standing requirement for all co-plaintiffs who are proper parties on
10 the same complaint seeking the same relief because the case before the court is justiciable. 525
11 U.S. 316, 330 (1999). Plaintiffs meet the standing elements set forth in *Lujan*, because plaintiffs'
12 amended complaint sufficiently alleged that all plaintiffs, including Mark Ottovich, are proper
13 parties seeking the same relief.

14 Defendants also allege that all claims against defendant Chase Home Finance must be
15 dismissed because they are not redressable. Specifically, defendant Chase asserts that it is a
16 different entity from defendant Washington Mutual and defendant JP Morgan and that it is not
17 responsible for or party to the dealings between those defendants and plaintiffs. Plaintiffs'
18 amended complaint, however, alleged nine claims against all defendants. Taking the assertions in
19 the amended complaint as true, defendants' argument for lack of standing on this point also fails.

20 For these reasons, defendants' motion to dismiss for lack of standing is **DENIED**.

### 3. BREACH OF CONTRACT

22 Plaintiffs' first claim is for breach of contract. Defendants move to dismiss on the ground
23 that the complaint does not allege sufficient facts. Defendants' motion to dismiss correctly sets
24 out the standard elements of a claim for breach of contract: "(1) the contract, (2) plaintiff's
25 performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff
26 therefrom." *Troyk v. Fanners Group, Inc.*, 171 Cal.App.4th 1305, 1352 (2009).

27 Plaintiffs alleged sufficient facts in their amended complaint to meet each element for a
28 breach of contract claim. *First*, plaintiffs entered into a contract with defendants for a loan on the

4

property. *Second*, although plaintiffs acknowledge nonperformance on that contract, they also alleged sufficient facts for excuse of that nonperformance. *Third*, the amended complaint alleged numerous instances of defendants' breach of that contract. *Fourth*, plaintiffs also asserted specific details as to damages suffered as a result of defendants' breach of contract with plaintiffs.

Defendants also assert that the agent-immunity rule applies and prevents plaintiffs from asserting a successful breach of contract claim. Plaintiffs' amended complaint, however, alleged that defendants were the "agents, employees, and co-conspirators of their co-defendants" and were "acting within the course and scope of the agency, employment and/or conspiracy" (Compl. ¶ 6). Plaintiffs alleged that defendants were acting in the scope of their agency relationship as one possibility, but it was not the only possibility they alleged. Plaintiffs also alleged defendants could have been acting in the scope of their employment. Assuming the latter is true, the agent immunity rule does not apply. Defendants argument fails.

Defendants' motion to dismiss plaintiffs' claim for breach of contract is **DENIED**.

### 4. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiffs' second claim is for breach of the implied covenant of good faith and fair dealing. To establish this claim, a plaintiff must establish the existence of a contractual obligation, the identities of the parties involved, and conduct that impedes the other party's rights to benefit from the contract. Plaintiffs have sufficiently pled all of these elements in the amended complaint under the breach of contract claim. In addition, defendants do not make specific arguments detailing how plaintiffs failed to establish the elements for this claim. Defendants' motion to dismiss this claim is **DENIED**.

### 5. RESPA

Plaintiffs' third claim alleged that the defendants violated RESPA by not responding to written requests from plaintiffs. Section 2605 under RESPA governs claims regarding written requests. Section 2605(e)(1) specifically requires servicers of federally related mortgage loans to respond to "qualified written requests" from borrowers seeking information relating to loan servicing. 12 U.S.C. 2605(e)(1). Servicers' failure to provide a response is actionable under Section 2605(f). A number of courts have read Section 2605(f) to require a showing of pecuniary

5

damages.  In *Hutchinson v. Delaware Savings Bank FSB*, the court stated that "alleging a breach of RESPA duties alone does not state a claim under RESPA.  Plaintiff must, at a minimum, also allege that the breach resulted in actual damages."  410 F. Supp. 2d 374, 383 (D.N.J. 2006).

Here, defendants argue that plaintiffs' RESPA claim fails because no pecuniary loss is alleged.  This order disagrees.  Plaintiffs alleged sufficient pecuniary damages resulting from defendants' alleged non-response to plaintiffs' written requests.  Plaintiffs specifically alleged that they had to pay late fees and other monetary penalties because of defendants' non-responsiveness.

For these reasons, defendants' motion to dismiss plaintiffs' RESPA claim is **DENIED**.

### 6. UNFAIR DEBT COLLECTION

Plaintiffs' fourth claim, for unfair debt collection, alleged that defendants violated provisions of California's Rosenthal Fair Debt Collection Practices Act and the Federal Debt Collections Act (Compl. ¶ 52–56).  Under these laws, a "debt collector" is any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6); *see also* Cal. Civ. Code 1788.2(c).  A defendant must be a "debt collector" to be subject to these laws.  Additionally, a complaint must allege how the "debt" at issue was an "obligation of . . . a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transactions are primarily for personal, family or household purposes" as required under these laws.  15 U.S.C. 1692a(5); *see also* Cal. Civ. Code 1788.2(b), (e).

Plaintiffs' amended complaint alleged that defendants were debt collectors and that the property was the home of Harvey Ottovich.  This satisfies the pleading requirements under the appropriate standard of review.  Defendants assert that they are not debt collectors as defined by law.  Defendants argue that the collection of debt or foreclosure of the property pursuant to default on a loan does not constitute debt collection.  *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002).  This argument is incomplete.  First, *Hulse* has been found to be overly broad in the categorical exclusions it provided under federal law to lenders.  *See Kaltenbach v. Richards*, 464 F.3d 524, 528–29 (5th Cir. 2006).  Second, the behavior of

6

defendants, in the instant case, goes beyond mere foreclosure proceedings, as plaintiffs alleged that defendants repeatedly obfuscated the truth with regard to the loan amounts and payments.

Defendants' motion to dismiss plaintiffs' unfair debt collection claim is **DENIED**.

### 7. ACCOUNTING

Plaintiffs' fifth claim was a demand for accounting. An accounting may take the form of a legal remedy or an equitable claim. A request for a legal accounting must be tethered to relevant actionable claims. To state a claim for accounting the complaint must allege: (1) a relationship or other circumstances appropriate to the remedy; and, (2) a balance due from the defendant to the plaintiff that can only be ascertained by an accounting. *Brea v. McGlashan,* 3 Cal.App.2d 454, 460 (1934). Defendants assert they did not enter into a fiduciary relationship with plaintiffs because a lender does not owe a fiduciary duty to a borrower. A fiduciary relationship between the parties, however, is not required to state a cause of action for an accounting. "All that is required is that some relationship exists that requires an accounting." *Teselle v. McLoughlin,* 173 Cal.App.4th 156, 179 (2009). The facts alleged by plaintiffs establish such a relationship and the potential need for an accounting.

Defendants' motion to dismiss plaintiffs' claim for accounting is **DENIED**.

### 8. INJUNCTIVE RELIEF

Plaintiffs' sixth claim is for injunctive relief. "In brief, the bases for injunctive relief are irreparable injury and inadequacy of legal remedies. In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987). The Supreme Court recently clarified that, even where a likelihood of success on the merits is established, a mere "possibility" of irreparable injury will not suffice; rather, irreparable injury must be "likely." *Winter v. Natural Resources Defense Council*, 129 S.Ct. 365, 374–76 (2008). Until this case is finally determined, it is impossible to say that injunctive relief will not be in order. Defendants' motion to dismiss plaintiffs' claim for injunctive relief is **DENIED**.

7

### 9. DECLARATORY RELIEF

Plaintiffs' seventh claim seeks declaratory relief. Until this case is finally determined, it is impossible to say that declaratory relief will not be in order. Defendants' motion to dismiss plaintiffs' claim for declaratory relief is **DENIED**.

### 10. UNFAIR BUSINESS PRACTICES

Plaintiffs' eighth claim is for unfair business practices. California unfair competition law covers "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code 17200 *et seq.* Persons authorized to bring claims under this code section are "those who have suffered injury in fact and lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code 17204. In addition, "damages" are *not* an available remedy under Section 17200. "A UCL [Section 17200] action is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003). A prevailing plaintiff is generally limited to injunctive relief and restitution, meaning monies or property unfairly obtained by defendants in which plaintiff has an ownership interest. *Id.* at 1144, 1148. Plaintiffs allege that defendants engaged in fraudulent, unlawful, and unfair practices within the meaning of the statute by failing and refusing to disclose information about current loans to its customers.

#### A. Fraudulent Conduct

After Section 17200 was amended in November 2004, plaintiffs must plead that they were injured in fact "as a result" of defendants' fraudulent conduct. This means that plaintiffs must allege that had the omitted information been disclosed, they would have been aware of it and behaved differently. Plaintiffs' amended complaint alleged that defendants made false promises, misappropriated funds, and withheld information. As a result, plaintiffs assert that they were injured because they had to pay additional fees, penalties, and even purchase additional insurance. Plaintiffs, therefore, state a factually sufficient claim for fraudulent conduct under Section 17200.

#### B. Unlawful Practices

Plaintiffs also allege that defendants engaged in unlawful practices in violation of Section 17200. A practice is unlawful if it violates a law other than Section 17200 when committed pursuant to business activity. *See Farmers Insurance Exchange v. Superior Court,* 2 Cal.4th 377,

8

383 (1992). Plaintiffs' amended complaint alleged that defendants actions were in violation of the RESPA and constituted unlawful conduct under Section 17200. Accordingly, plaintiffs' allegation that defendants violated Section 17200 for unlawful practices is sufficient.

### C. Unfair Practices

A business practice constitutes unfair competition "if it offends an established public policy or . . . is immoral, unethical, oppressive, unscrupulous *or* substantially injurious to consumers." *People v. Duz-Mor Diagnostic Laboratory, Inc.*, 68 Cal.App.4th 654, 658 (1998) (internal quotations and citations omitted). While a business practice can constitute unfair competition if it causes consumers to pay higher prices, a business practice can also constitute unfair competition if the practice offends public policy. *Ibid*. Plaintiffs alleged that defendants both caused plaintiffs to pay higher prices, through the misappropriation of funds, and also violated public policy by refusing to serve plaintiffs as loan customers. Plaintiffs adequately pled defendants' conduct was unfair within the meaning of the statute.

Defendants' motion to dismiss plaintiffs' claim for unfair competition is **DENIED** without prejudice to trial or to summary judgment on a more complete record.

### 11. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs' ninth claim against defendants is for intentional infliction of emotional distress. To state a claim for this tort, a party must allege (1) outrageous conduct, "so extreme as to exceed all bounds of that usually tolerated in a civilized community," (2) an intent to cause or a reckless disregard of the possibility of causing emotional distress, (3) severe or extreme emotional distress, and (4) that the outrageous conduct proximately caused the emotional distress. *Symonds v. Mercury Sav. & Loan Ass'n*, 225 Cal.App.3d 1458, 1468 (1990).

Plaintiffs' amended complaint is insufficient under *Iqbal* and *Twombly*. Plaintiffs' amended complaint lacks specific facts describing the severe emotional distress suffered, let alone that defendants' conduct proximately caused this distress. Plaintiffs merely assert legal conclusions that they suffered severe emotional distress as a result of the conduct of defendants. Furthermore, plaintiffs also failed to allege sufficient facts to establish intent by defendants to

inflict emotional distress. Plaintiffs' claim for intentional infliction of emotional distress is **DISMISSED** with leave to amend.

### CONCLUSION

For the reasons set forth above, defendants' motion to dismiss all claims asserted in the complaint is **GRANTED IN PART AND DENIED IN PART**. Specifically, defendants' motion to dismiss claim nine is **GRANTED** with leave to amend and **DENIED** as to all other claims. Plaintiffs may seek leave to amend the complaint and will have **FOURTEEN CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day calendar, for leave to amend the complaint. If no motion is filed by this deadline, the claim will be dismissed.

The hearing on this motion is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: September 22, 2010.

/s/ William Alsup

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE