IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARVEY OTTOVICH, as trustee for the Harvey G. Ottovich Revocable Living Trust dated May 12, 2006, MARK OTTOVICH, as successor trustee for and beneficiary of the Harvey G. Ottovich Revocable Living Trust dated May 12, 2006, and the HARVEY G. OTTOVICH REVOCABLE LIVING TRUST, dated May 12, 2006,<br><br>    Plaintiffs,<br><br>  v.<br><br>CHASE HOME FINANCE, LLC, WASHINGTON MUTUAL, INC., JP MORGAN CHASE BANK, N.A., an acquirer of certain assets and liabilities of Washington Mutual Bank from Federal Deposit Insurance Corporation acting as receiver,<br><br>    Defendant.<br>                                     / | No. C 10-02842 WHA<br><br>**ORDER DENYING RELIEF FROM JUDGMENT AND ORDER OF DISMISSAL** |

**INTRODUCTION**

This FRCP 60(b) motion requesting relief from judgment and from order of dismissal will be denied as too little too late. To the extent relevant, the alleged facts plaintiffs now present could and should have been submitted earlier. Moreover, the Court has studied the materials submitted and is disturbed to find statements under oath that are contradicted by the record and even by prior under-oath statements by the same witness. This order also notes that no notice of appeal was filed and suspects that this motion is a device for somehow reinstating the time within which to appeal. For the reasons stated below, the motion is **DENIED.**

**STATEMENT**

This case boils down to a failure to repay a bank after which the bank began to exercise its rights. Whereupon the plaintiff borrowers commenced this action to maintain possession (without payment). Plaintiffs Harvey Ottovich, Mark Ottovich, and the Harvey G. Ottovich Revocable Living Trust filed this lawsuit in state court on May 27, 2010. It was then removed by defendants, Chase Home Finance, LLC, Washington Mutual, Inc., and JP Morgan Chase Bank N.A. Plaintiffs owned a residential investment property secured by a loan obtained through defendants. Plaintiffs alleged that defendants breached the loan agreement and violated various state and federal laws (Sec. Amd. Compl. ¶¶ 24-92). Defendants denied that they breached the agreement, and stated that plaintiff Harvey Ottovich was delinquent. Although plaintiffs had not been making mortgage payments for more than two years, plaintiffs had been collecting rent from a tenant residing at the property.

This action dragged on longer than usual, due in large part to the repeated and unjustified failures of plaintiffs and their counsel to comply with court orders. In November 2010, Attorney Mar failed to attend a hearing on an order to show cause. In the summer of 2011, plaintiffs failed to attend settlement conferences and hearings on August 26, August 29, August 30, and September 6. Though Attorney Mar was present at the August 26 and September 6 court dates, he failed to show up for the August 29 and August 30 settlement conferences. A year later in September of 2012, plaintiffs and Attorney Mar failed to attend another settlement conference on September 27. Attorney Mar was present for the subsequent hearing to show cause on October 1, 2012, but plaintiffs were not. The action was ended with a terminating sanction and judgment against plaintiffs on October 3, 2012. Now, here are some of the shortfalls by plaintiffs and their counsel that led up to the dismissal.

**1. ORDER TO SHOW CAUSE HEARING IN NOVEMBER 2010 AND FILING OF SECOND AMENDED COMPLAINT.**

On November 3, 2010, Attorneys Norman Newhouse and Craig Mar, counsel for plaintiffs, were ordered to show cause why they should not both be referred to the state bar for unauthorized practice of law, and aiding and abetting the unauthorized practice of law,

respectively (Dkt. No. 39). Although suspended by the state bar and not authorized to practice law, Attorney Newhouse, using Attorney Mar's credentials, had in fact electronically filed all of plaintiffs' submissions to that point. The Ottovich plaintiffs themselves were sophisticated, repeat litigants and were not victims, but beneficiaries of this scheme. At the hearing on the order to show cause, Attorney Newhouse appeared but Attorney Mar did not, although the attendance of both attorneys had been ordered. An order issued referring Attorneys Newhouse and Mar to the state bar (Dkt. No. 43). Plaintiffs were nonetheless allowed to file their second amended complaint, even though the amendment deadline of November 8 had passed.

On November 29, 2010, plaintiffs were ordered to show cause why the action should not be dismissed for failure to prosecute because plaintiffs had still not filed their second amended complaint (Dkt. No. 46). Plaintiffs eventually filed their second amended complaint on December 2. Plaintiffs were forgiven this delay.

### 2. COURT-ORDERED SETTLEMENT CONFERENCES IN AUGUST 2011.

Following the pretrial conference on August 15, 2011, the parties were ordered to mediation before Magistrate Judge Nathanael Cousins on August 26 (Dkt. No. 98). The parties were informed by his order that personal attendance by counsel "will not be excused under any circumstances" and that personal attendance by a party will "rarely be excused" (Dkt. No. 97). The order stated that any request to continue the settlement conference had to be submitted in writing, demonstrate a compelling reason for continuance, and had to state whether the opposing parties agree to or oppose the request.

Plaintiffs Mark and Harvey Ottovich did *not* appear at the August 26 settlement conference before Judge Cousins. Defendants' counsel and corporate representative were present. The settlement conference was continued by Judge Cousins to August 29 and plaintiff Mark Ottovich was ordered by the magistrate judge to "appear and ordered to show cause why he should not be found in contempt of court" (Dkt. No. 107). On August 29, neither plaintiffs nor their counsel appeared for the settlement conference. The magistrate judge ordered plaintiffs and their counsel to "show cause why they should not be sanctioned for failure to comply with Court orders" (Dkt. No. 109). A third settlement conference was scheduled for August 30, 2011,

3

but not held because plaintiffs and their counsel again failed to appear. No request to continue any of the settlement conferences had been filed. As a result of these violations of court orders, plaintiffs and their counsel were sanctioned, as described below.

### 3. ORDER TO SHOW CAUSE HEARING IN SEPTEMBER 2011 AND SANCTIONS.

On August 31, 2011, the day after plaintiffs and Attorney Mar failed to attend the August 30 settlement conference, plaintiffs were ordered by the undersigned judge to show cause why the action should not be dismissed for failure to attend the settlement conferences (Dkt. No. 111). A subsequent order stated that both "Attorney Mar and plaintiffs are under an obligation to appear" (Dkt. No. 112). At the hearing, held on September 6, 2011, before the undersigned judge, neither Mark nor Harvey Ottovich were present, although Attorney Mar appeared. Plaintiffs and their counsel were ordered to pay sanctions to defendant and to the Clerk for failure to comply with orders, both in the amount of $1200. The order found that "there [was] absolutely no doubt that the Ottoviches violated the Court Order" to attend the settlement conference on August 26, 2011, and further violated court orders by failing to attend the August 29 and 30 settlement conferences (Tr. 22). At the hearing, Attorney Mar was warned a terminating sanction was under consideration: "by all rights, this case ought to be dismissed for lack of prosecution, and be dismissed on account of repeated violation of Court Orders" (*id.* at 23).

### 4. COURT-ORDERED SETTLEMENT CONFERENCE IN SEPTEMBER 2012.

On December 19, 2011, the action was stayed due to the six-month suspension of plaintiffs' counsel, Craig Mar, from the bar of the United States District Court for the Northern District of California. All the while plaintiffs were collecting rent from the tenant but not making payments to the lender. When the stay ended in May 2012, the parties and their counsel were ordered to return to Magistrate Judge Cousins for a further settlement conference (Dkt. No. 132). On June 28, 2012, a settlement conference was held at which the Ottoviches were present (Dkt. No. 135). At that time, a further settlement conference was scheduled for September 27 (*ibid.*).

4

On September 24, three days before the settlement conference, Attorney Mar filed an *ex parte* motion for continuance of the settlement conference (Dkt. No. 140). The motion was made on the grounds that (1) plaintiff Harvey Ottovich had allegedly been admitted to a care center on or about July 31, 2012, and had allegedly suffered a heart attack, and (2) "Attorney Mar has a scheduling conflict with another case which he did not anticipate." The motion did not include any details regarding Attorney Mar's alleged conflict, such as the date and location of the conflict, the nature of the case, or why Attorney Mar waited until three days before the settlement conference to file the motion. In the pithy attorney declaration, Attorney Mar stated that Mark Ottovich had informed him via telephone that Harvey Ottovich had suffered a heart attack. No evidence substantiating Harvey Ottovich's medical condition was provided. Regarding Attorney Mar's purported conflict, the declaration stated only that Attorney Mar had "noticed a scheduling conflict with another case in another jurisdiction" on or about September 17, 2012 (*id.* at 5-6). The motion for continuance was denied on September 25 by the magistrate judge for failure to meet and confer with opposing counsel. The order stated that "counsel and clients are expected to be present absent further order of the Court" (Dkt. No. 141). Notwithstanding the clear order, neither plaintiffs nor their counsel appeared at the September 27 settlement conference, bringing the plaintiffs' tally of missed appearances to five.

### 5. ORDER TO SHOW CAUSE HEARING IN OCTOBER 2012.

Plaintiffs and their counsel were ordered to show cause why the action should not be dismissed for lack of prosecution and failure to attend the settlement conference on September 27, 2012 (Dkt. No. 144). At the hearing, held on October 1 before the undersigned judge, Attorney Mar testified under oath that he had agreed to undertake representation of a client in a criminal matter in Las Vegas, although he was not admitted to practice in that jurisdiction. The criminal matter was set for hearing in Las Vegas at 8 a.m. on September 28, the day after the mandatory settlement conference. Attorney Mar testified that he drove from the Bay Area to Las Vegas on September 27 (Dkt. No. 145 at 5-6). Counsel for defendants, Theodore Bacon testified under oath that Attorney Mar had represented to him that the hearing would be on September 27 (*id.* at 11). It was not. It was on September 28. Attorney Bacon further testified that Attorney

5

1  Mar had not contacted him at any point to attempt to find an alternate date for the settlement
2  conference.

3   Plaintiffs Mark and Harvey Ottovich did not attend the October 1 hearing, although the
4  order to show cause clearly required them to do so. Nor did plaintiffs submit any statements,
5  sworn or otherwise, in response to the order to show cause. Attorney Mar testified that he
6  notified his client Mark Ottovich of the September 27 settlement conference "many times" and
7  "urged him to attend" (Dkt. No. 145 at 9–10). Although Attorney Mar notified Mark that he was
8  unable to attend, he told Mark that Mark was still expected to attend (*id*. at 16). Attorney Mar
9  was unable to provide any reason why Mark did not attend the settlement conference. Attorney
10 Mar also testified that, according to hearsay many weeks old, Harvey Ottovich was ill and had
11 been hospitalized on July 31, 2012. Attorney Mar had no current information.

12  On October 5, 2012, Attorney Mar filed a request to view and make corrections to the
13 transcript of the October 1 hearing (Dkt. No. 149). In his sworn declaration filed with the
14 request, Attorney Mar stated, "I was asked a number of questions under oath by Judge Alsup
15 concerning reasons I did not attend the settlement conference on 9/27/12. I would like to correct
16 any mistakes made on the record" (*id*. at 3–4). There is nothing further in the record suggesting
17 Attorney Mar made corrections.

18  **6. ATTORNEY MAR'S SWORN DECLARATION.**

19  This lawsuit was dismissed almost a year ago under FRCP 41(b) on October 3, 2012, for
20 failure to prosecute and obey reasonable court orders. Plaintiffs now move for relief from
21 judgment and from order of dismissal. In support of the motion, plaintiffs filed a declaration
22 from Attorney Mar (Dkt. No. 158). This sworn declaration directly contradicts Magistrate Judge
23 Nathanael Cousins' findings and Attorney Mar's own under-oath testimony at the proceeding on
24 October 1, 2012 (Dkt. Nos. 113, 145). With regard to the August 26 settlement conference,
25 Judge Cousins found:

> Plaintiffs Harvey Ottovich and Mark Ottovich failed to appear. (Plaintiff Mark Ottovich later represented that he has power of attorney for his brother, Harvey Ottovich, in this case) . . . . The Court called Mark Ottovich on the telephone, with all counsel present. Mr. Ottovich said he was in Fremont, California, had a filing due in another court case that day, and could not be present. The Court inquired as to his availability on August 29. Mr. Ottovich said he was available to attend a Settlement Conference [sic] on

6

> Monday, August 29, 2011, at 1:30 p.m. The Court therefore continued the Settlement Conference [sic] to August 29. The Court reiterated the requirement that Plaintiffs [sic] and their counsel appear at the conference in person. *Mark Ottovich expressly stated that he would attend the Conference [sic] on August 29. Mr. Mar also said he would attend. The Court warned Mark Ottovich that he might be found in contempt of court if he did not participate in the settlement conference.*

(Dkt. No. 113 at 3 (emphasis added)). Attorney Mar now states in his sworn declaration:

> I attended the August 26 settlement conference while Mark Ottovich appeared by phone. I mentioned the settlement conference date to Harvey Ottovich and informed Mark Ottovich of the date on August 24, 2011 [sic] two days before the hearing. The Court continued the settlement conference to August 29 *without my knowledge* and the magistrate judge ordered plaintiff Mark Ottovich to "appear and . . . show cause why he should not be found in contempt of court." I did not inform Mark Ottovich of the August 29, 2011 [sic] hearing because I neglected to check the e mails [sic] for ECF court orders. There were a number of Orders [sic] issued by Cousins around the 27th and 28th of August. On August 29, I failed to appear for the settlement conference because I was not aware of it. *Neither Attorney Mar nor Mr. Mark Ottovich were aware of the 8/29/11 settlement conference.*

(Dkt. No. 158 at 2-3 (emphasis added)). At the October 2012 hearing, Attorney Mar was asked why his client did not attended the settlement conference on September 27, 2012 (Dkt. No. 145 at 8). Attorney Mar replied under oath:

> I don't know. *I urged him to attend.* And I notified him of the date many times. I really don't know . . . . I told him that he should attend it . . . . I think I told him at least a few days or a week before the settlement conference. *I already told him I can't [sic] make it. And — but, uhm, I still expected him to — to make it.*

(*id*. at 8-9, 16 (emphasis added)). Attorney Mar now states in his sworn declaration:

> My six-month suspension from the Committee of Professional Responsibility of the District Court forced the Court to stay the action from December 2011 to May 2012. When the stay was lifted in May 2012, the parties and I were ordered to return to Magistrate Judge Cousins for a further settlement conference on June 28. Plaintiffs attended and participated in that settlement conference. On that date, a further settlement conference was scheduled for September 27. On September 24, I filed an ex parte motion for continuance of the settlement conference. The motion was made on the grounds that (1) plaintiff Harvey Ottovich had been admitted to a care center on or about July 31, 2012 [sic] due to a heart attack and he was still ill in September, and (2) I believed I had a scheduling conflict with another case. I failed to include any details regarding the conflict, but I had noted that I had "noticed a scheduling conflict with another case in another jurisdiction" on or about September 17. The motion included no evidence substantiating Harvey Ottovich's medical condition. The magistrate judge denied the motion on September 25 because of my failure to meet and confer with opposing counsel. The order stated that "counsel and clients are expected to be present absent further order of the Court." Notwithstanding this, I did not appear on September 27. *I also mistakenly advised plaintiffs that since I was unable to appear, they need not appear either.*

(Dkt. No. 158 at 3-4 (emphasis added)).

**ANALYSIS**

7

FRCP 60(b) allows courts to set aside judgment under six grounds, just two of which are relevant here. "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . [or] (6) any other reason that justifies relief." FRCP 60(b)(1), (b)(6).

Plaintiffs' motion, citing authority from our court of appeals, stresses the importance of deciding a case on its merits (Dkt. No. 150 at 6). Dismissal under FRCP 41(b) was appropriate here. The Court reviewed policy considerations in the order to dismiss this case and noted that the public policy "factor 'lends little support' to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *In re Phenylpropanolamine Products Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006).

Plaintiffs' motion inexplicably argues that rather than dismissal, lesser sanctions "would have been more appropriate" (Dkt. No. 150 at 8). Lesser sanctions were already tried (Tr. 26). Monetary sanctions failed to remedy plaintiffs' behavior.

Plaintiffs' reply complains that plaintiffs were "given no warning or notice that their case was about to be dismissed" (Dkt. No. 156 at 8). There is some authority that in the case of impending dismissal sanctions, the parties themselves should be directly informed. *Shea v. Donohoe Construction, Inc.*, 795 F.2d 1071, 1079 (D.C. Cir. 1986). In *Shea*, the court held that the District Court should have "explored sanctions directly against the attorneys involved or directly informed the client of his attorney's dereliction prior to dismissing the case" (*ibid.*). In that case, the party was blameless. Not so here.

Plaintiffs' current motion for relief from judgment is nothing more than a motion for reconsideration. Under Civil L.R. 7-9(b), motions for reconsideration are only applicable to interlocutory orders. Even then, plaintiffs may not notice a motion for reconsideration "without first obtaining leave of Court to file the motion."

1. **FRCP 60(B)(1).**

The Supreme Court has held that "[i]f a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable."

8

1 *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The determination of what conduct constitutes "excusable neglect" under FRCP 60(b)(1) "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omissions." *Brandt v. American Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1111 (9th Cir. 2011). To determine whether plaintiffs' actions constitute "excusable neglect" under FRCP 60(b)(1), courts must apply "a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010) (citing *Pioneer*, 507 U.S. at 395).

### A. Prejudice.

Plaintiffs' reply argues that defendants have not been prejudiced because defendants have not "tried to do anything" (Dkt. No. 156 at 7). Plaintiffs' repeated failure to appear at settlement conferences has prejudiced defendants, who sent counsel and a corporate representative to court three times for settlement conferences which plaintiffs did not attend. Defendants have also been prejudiced by the unreasonable delay due to plaintiffs' failure to diligently prosecute this case. *See Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976). *During the pendency of this action, defendants had not received mortgage payments from plaintiffs, although plaintiffs continued to receive rent from a tenant of the subject property.* Defendants further claimed that they had been unable to seek other means of redress while this lawsuit was pending. The Court finds that, under the circumstances of this case, plaintiffs' actions were prejudicial to defendants.

### B. Delay.

Plaintiffs originally filed this action in May 2010. The action was stayed for six months due to the suspension of Attorney Mar from the practice of law as a result of his conduct on behalf of plaintiffs in this lawsuit. The action was stayed a second time for ninety days for the specific purpose of allowing further settlement negotiations. After this case was dismissed under FRCP 41(b), plaintiffs waited over nine months before filing this motion for relief. Plaintiffs and

9

1 their counsel's unjustified failure to attend the court-ordered settlement conferences resulted in
2 significant delay and a waste of judicial resources.

3 Plaintiffs' reply argues that "an expeditious resolution of the matter can be had" if only
4 their motion is granted (Dkt. No. 156 at 7). That train has already left the station.

### C. Reason for Delay.

Plaintiffs' motion argues that their failure to prosecute the case and obey reasonable court orders was due to the conduct of their former attorney, Craig Mar (Dkt. No. 150 at 6-7). Their motion and reply present authority showing that attorney negligence can constitute excusable neglect (Dkt. Nos. 150 at 7 and 156 at 1-2). The decisions plaintiffs cite involve dismissals where the courts failed to consider lesser sanctions or the parties were blameless or both. The present case is different. Lesser sanctions were issued on September 6, 2011, and Mark and Harvey Ottovich were not blameless for the delay in this case. They failed to appear at five conferences and hearings they were required to attend: August 26, 2011; August 29, 2011; August 30, 2011; September 6, 2011; and September 27, 2012. Despite Attorney Mar's alleged negligence, plaintiffs knew or should have known of at least three of these five appearances.

Mark and Harvey Ottovich state in their sworn declaration that "Mr. Mar did not advise us that the case had been ordered to mediation or that we were required to attend court on August 26, 2011" (Dkt. No. 152 at 1). Plaintiffs' own motion contradicts this, noting that on August 24, Attorney Mar informed the Ottoviches of the August 26 settlement conference (Dkt. No. 150 at 3).

Mark Ottovich's declaration states that he saw "no point in going [to the August 29 conference] since [Harvey] was ill" and could not go (Dkt. No. 157 at 1). In his order recommending dismissal, Judge Cousins outlines his conversation with Mark Ottovich and explicitly notes that Mark "said he would attend" the August 29 conference (Dkt. No. 113 at 3). Judge Cousins also "warned Mark Ottovich that he might be found in contempt of court if he did not participate in the settlement conference" (*ibid.*).

Plaintiffs' motion argues that Attorney Mar advised them their presence was not required at the hearing to show cause on September 6, 2011 (Dkt. No. 150 at 4). Although the

10

1  Ottoviches' sworn declaration states that Attorney Mar told them "only he was required to
2  attend," the allegation is unsupported by Attorney Mar's sworn declaration, which only states
3  that he "may have forgotten to inform the Ottoviches to attend" (Dkt. No. 158 at 3). This excuse
4  is inadequate. Mark and Harvey Ottovich were present at the pretrial conference on August 15,
5  2011 (Tr. 2). At that conference, Mark and Harvey Ottovich were informed of the September 6
6  trial date by the Court (*ibid.*). They knew they had an important court date on September 6.

7  Plaintiffs' motion argues that Attorney Mar told plaintiffs that they need not appear at the
8  settlement conference on September 27, 2012 (Dkt. No. 150 at 5). There are many
9  contradictions on this point. Attorney Mar first testified under oath that he told plaintiffs they
10 should attend the September 27 conference even though he was going to be absent (Dkt. No. 145
11 at 8-9, 16). Plaintiffs' motion disputes this (Dkt. No. 150 at 6). Attorney Mar has since
12 contradicted himself in a sworn declaration (Dkt. No. 158 at 3-4). Plaintiffs' sworn declaration
13 introduces yet another explanation stating: "Mr. Mar told us . . . that he was going to obtain a
14 continuance" (Dkt. No. 152 at 2). Judge Cousins unequivocally denied the motion for
15 continuance and ordered the Ottoviches to be present at the conference (Dkt No. 141). The
16 Court finds that plaintiffs' self-serving statements are untrue.

17 In addition to plaintiffs' aforementioned misrepresentations, there may be other
18 misrepresentations by plaintiffs. It is unnecessary, however, for this order to list them here.

19 Plaintiffs' reply notes that Attorney Mar filed a motion to withdraw from representing the
20 Ottoviches, but that motion was denied (Dkt. No. 156 at 5, 7-8). The reply argues that plaintiffs
21 cannot be blamed for the misconduct of an attorney they did not retain voluntarily (*ibid.*).
22 Plaintiffs are not being blamed for the conduct of Attorney Mar. They are being held
23 accountable for their own conduct. Even if plaintiffs were not independently blameworthy, this
24 point would not be dispositive in their favor. The Court denied Attorney Mar's motion to
25 withdraw because, with the exception of his suspension, the reasons he attempted to withdraw
26 were not a surprise to him. Attorney Mar was fully aware of them when he earlier represented
27 that he would remain the Ottoviches' counsel for the duration of the lawsuit (Dkt. No. 75). If the
28

motion had been granted, plaintiffs would have been left without counsel. Rather than putting plaintiffs in that position, the Court issued a stay during Attorney Mar's suspension.

At the September 5 oral argument, plaintiffs argued that their inability to prosecute this case, if not due to their attorney's negligence, was due to Mark Ottovich's poor memory. In their sworn declaration, the Ottoviches state that "[b]oth of us were and are having health difficulties that affect our ability to handle our legal matters . . . . Mark Ottovich is . . . experiencing memory problems" (Dkt. No. 152 at 3). By way of documentation, the Ottoviches attach a receipt for a product called "BrainEdge" (Dkt. No. 152-1). Such a receipt does not sufficiently show the nature, extent, or even existence of Mark Ottovich's alleged memory problems.

### D. Good Faith.

Given the contradictions between the record and the plaintiffs' explanations of their actions, the plaintiffs' good faith is not certain. Even if the plaintiffs acted in good faith however, a balancing of the four factors would produce the same result.

### 2. FRCP 60(B)(6).

The Supreme Court has noted that even when parties are "faultless," and circumstances like "incarceration, ill health, and other factors beyond . . . reasonable control" prevent them from making timely filings, they cannot seek relief under FRCP 60(b)(1), and must seek relief under FRCP 60(b)(6). *See Pioneer*, 507 U.S. at 393. "To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Ibid*. (citations omitted). Furthermore, our court of appeals has noted that FRCP 60(b)(6) "has been used sparingly as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).

### A. Attorney Mar's Gross Negligence.

Our court of appeals has held that "an attorney's gross negligence resulting in dismissal with prejudice for failure to prosecute constitutes an 'extraordinary circumstance' under Rule 60(b)(6) warranting relief from judgment." *Lal v. Cal.*, 610 F.3d 518, 524 (9th Cir. 2010). For reasons stated above, the conduct of Attorney Mar is irrelevant to this FRCP 60(b) motion.

1 Plaintiffs Mark and Harvey Ottovich were independently responsible for failing to comply with
2 court orders.

### B. Ill Health.

Plaintiffs' reply argues that Harvey Ottovich "was a necessary and important participant in the proceedings (Dkt. No. 156 at 3). This may not be so. Judge Cousins found that "Mark Ottovich . . . represented that he has power of attorney for his brother, Harvey Ottovich, in this case" (Dkt. No. 113 at 3). Even if Harvey's participation in the proceedings was required, plaintiffs have failed to show why he could not attend.

According to plaintiffs, Harvey Ottovich was unable to comply with court orders because he was ill. If true, this places him under FRCP 60(b)(6), as circumstances beyond his control would have prevented him from complying with court orders. *See Pioneer Inv. Servs. Co.*, 507 U.S. at 393. This Court, however, cannot find that plaintiffs have shown the extraordinary circumstances warranting relief under FRCP 60(b)(6).

Plaintiffs cannot show they were faultless because they have not provided proof that illness interfered with Harvey Ottovich's ability to comply with court orders. The record fails to show that Harvey Ottovich was in the hospital at any time conflicting with a court appearance. Plaintiffs also fail to provide proof that Harvey Ottovich's convalescence interfered with his ability to comply with court-ordered appearances.

Plaintiffs provide health records, but there is little documentation relevant to court appearances. They attach a "Patient Health Journal" showing three relevant entries: "Heart Failure" on July 15, 2011, "Depressive Disorder" on August 26, 2011, and "Rectal Bleeding" on September 26, 2011 (Dkt. No. 152-1). There is also a letter dated August 20, 2012, noting that Harvey Ottovich was still "under convalescent care" at that time (*ibid.*).

The August 2011 entry coincides with a settlement conference date, but gives no indication as to the conditions, nature, severity, or timing of the health issue. The September 2011 entry is twenty days after the court appearance in question and also gives no indication as to the conditions, nature, severity, or timing of the health issue. While the August 2012 letter does explain that Harvey Ottovich was then "unable to deal with stress [sic] of legal

proceedings," it is insufficient proof of his inability to attend a hearing over a month later on September 24. None of the "Patient Health Journal" entries appear to have triggered a hospital stay (*ibid.*).

Even if plaintiffs now provided adequate proof that Harvey Ottovich's illness caused him to violate court orders, plaintiffs should have presented that proof in response to the many orders to show cause. Plaintiffs could have done this during the show-cause hearings on any of the following dates: August 29, 2011; August 30, 2011; September 6, 2011; or October 1, 2012.

Plaintiffs' motion argues that plaintiffs were not afforded a continuance of the September 2012 conference because of Attorney Mar's gross negligence (Dkt. No 150 at 8-9). This is not so. The motion for continuance was denied, in part, because there was no showing about Harvey Ottovich's illness. Plaintiffs' motion argues that plaintiffs could have provided proof of his inability to attend the conference (*ibid.*). Since they have not yet provided such proof, the Court must assume they cannot.

## CONCLUSION

For the forgoing reasons, plaintiffs' FRCP 60(b) motion is hereby **DENIED**. This denial is with prejudice. Because of blatant contradictions between the record and Attorney Mar's various sworn statements, the Clerk shall send a copy of this order to the Bar of the State of California for potential disciplinary action.

In no way does this order revive any period for appealing from the original judgment entered on October 3, 2012. The Clerk will keep the file closed.

**IT IS SO ORDERED.**

Dated: September 6, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

14